# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CATHY HOUGHALING, | : CASE NO. 3:12-cv-02084-GBC |
| | : |
| Plaintiff, | : (MAGISTRATE JUDGE COHN) |
| | : |
| v. | : MEMORANDUM TO DENY PLAINTIFF'S |
| | : APPEAL |
| CAROLYN W. COLVIN, | : |
| ACTING COMMISSIONER OF | : Docs. 8,9,10 |
| SOCIAL SECURITY, | : |
| | : |
| Defendant. | : |

**MEMORANDUM TO DENY PLAINTIFF'S APPEAL**

**I. Procedural History**

On April 7, 2009, Cathy Houghaling ("Plaintiff") protectively filed an application for Title II Social Security Disability benefits ("DIB"), with an onset date of August 16, 2008. (Tr. 108).

This application was denied, and on January 20, 2011, a hearing was held before an Administrative Law Judge ("ALJ"), where Plaintiff testified and was represented by counsel. (Tr. 20). On May 27, 2011, the ALJ issued a decision finding that Plaintiff was not entitled to DIB because Plaintiff could perform her past relevant work as a nurse. (Tr. 17-28). On August 17, 2012,

the Appeals Council denied Plaintiff's request for review, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-5).

On October 17, 2012, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g), to appeal a decision of the Commissioner of the Social Security Administration denying social security benefits. Doc. 1.

On December 19, 2012, Commissioner filed an answer and administrative transcript of proceedings. Docs. 7,8. In January and February 2013, the parties filed briefs in support. Docs. 9,10. On May 1, 2014, the Court referred this case to the undersigned Magistrate Judge. On May 19, 2014, the parties consented to Magistrate Judge jurisdiction. Doc. 12.

## II.     Standard of Review

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 564 (1988); Hartranft v. Apfel, 181 F.3d 358, 360. (3d Cir. 1999); Johnson, 529 F.3d at 200.

This is a deferential standard of review. See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence is satisfied without a large quantity of evidence; it requires only "more than a mere scintilla" of evidence. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). It may be less than a preponderance. Jones, 364 F.3d at 503. Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. Monsour

Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).

To receive disability or supplemental security benefits, Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).

Moreover, the Act requires further that a claimant for disability benefits must show that he has a physical or mental impairment of such a severity that: "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

### III. Relevant Facts in the Record

#### A. Background

At the time of the ALJ's decision, the Plaintiff was 45 years of age with a date of birth of December 2, 1965. (Tr. 108). She alleged disability since August 16, 2008. (Tr. 108). Plaintiff alleged disability as a result of bilateral metacarpal joint disease and chronic neck pain. (Tr. at 121). Her past work experience was as a registered nurse. (Tr. 122).

In daily activities, Plaintiff handled personal care, took medication, took care of a dog, sorted laundry, and socialized (Tr. 139). Although Plaintiff alleged a difficulty using her hands, she could draft a check and lift a gallon of milk (Tr. 51, 142).

**B. Relevant Medical Evidence**

**1. Relevant Medical Evidence as of Plaintiff's Alleged Onset Date of Disability**

Plaintiff presented to Ashok Kumar, M.D., on September 9, 2008 for a pain management consultation (Tr. 175-76). Dr. Kumar indicated that Plaintiff's lateral flexion, neck flexion, and extension were mildly limited due to pain (Tr. 175). Although Plaintiff had some tenderness in her lumbosacral area, her deep tendon reflexes were normal, and she had full strength in her upper extremities (Tr. 175). As a result, Dr. Kumar performed a lumbar epidural steroid injection with bilateral occipital nerve block (Tr. 192, 246).

Plaintiff presented to Seth P. Shifrin, M.D., on September 11, 2008. Dr. Shifrin noted that Plaintiff had tenderness in her hands, she had full range of motion in her wrists, normal grip strength, and normal upper extremity strength (Tr. 291, 332). Although Plaintiff's grip strength had decreased bilaterally by January 21, 2009, she still had a full range of motion in her wrists (Tr. 331).

An MRI of Plaintiff's left shoulder on April 23, 2009 was negative for rotator cuff tear and mild degenerative changes in the acromioclavicular joint (Tr. 201-02, 209-10, 222, 267-68, 302-03). Although Dr. Shifrin noted a limited range of motion in Plaintiff's right thumb and shoulder on June 10, 2009, he recommended nothing more than continuation of physical therapy and occupational therapy (Tr. 328).

Lisa Petre, M.D., prepared a plethora of occupational therapy notes in June 2009. Although Plaintiff complained of a sore hand, wrist, and shoulder, her notes indicated that Plaintiff's shoulder was within normal limits (Tr. 277-78, 280-81, 283). Further, Dr. Petre recommended physical therapy for strengthening Plaintiff's range of motion and relieving her pain (Tr. 284).

State agency physician Elizabeth Kamenar, M.D., prepared an assessment of Plaintiff's

physical ability to perform work on July 8, 2009 (Tr. 320-26). Dr. Kamenar indicated that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk six hours in an eight-hour workday, sit six hours in an eight-hour workday, and push and/or pull a limited amount in the upper extremities (Tr. 319). Plaintiff had occasional postural limitations and manipulative limitations regarding her ability to reach in all directions and handle (Tr. 320-21). Plaintiff had no visual or communicative limitations (Tr. 320-21). Plaintiff should avoid concentrated exposure to extreme cold, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights (Tr. 321). Dr. Kamenar noted that Plaintiff could "perform occasional activities involving handling with her right hand. Her right hand is her dominant hand" (Tr. 320). State agency physician Jeffrey Nugent, M.D., reviewed and affirmed Dr. Kamenar's opinion on July 22, 2009 (Tr. 325-26).

Plaintiff presented to treating physician Bradley Giannotti, M.D., on several occasions. Dr. Gionnotti noted normal bony mineralization throughout Plaintiff's right hand on August 12, 2009 (Tr. 306, 344).

Plaintiff, upon referral from Dr. Giannotti, presented to Kalliopi K. Nestor, M.D., for a consultative examination on August 20, 2009 (Tr. 347-48). Dr. Nestor noted Plaintiff had full strength in all muscle groups except for bilateral hand grip which was four out of five (Tr. 347). Plaintiff's muscle stretch reflexes were two out of four, and she had symmetrical strength in bilateral biceps, triceps, and brachioradialis (Tr. 347). Plaintiff also had a full range of motion of her bilateral upper extremities and cervical spine (Tr. 347). Dr. Nestor recommended continuation of occupational therapy (Tr. 347).

Dr. Gionnotti performed a right carpometacarpal (CMC) arthroplasty on May 6, 2009 (Tr.

214, 263, 312). Two months after surgery and treatment through a thumb spica splint, Dr. Gionnotti noted that Plaintiff was doing well and had a full range of motion in her wrist (Tr. 327, 329). Accordingly, he recommended continuation of conservative treatment of outpatient physical therapy, occupational therapy, and range of motion exercises (Tr. 327).

In November 2009, both the Plaintiff's urine and blood were negative for the presence of narcotics, despite her contention that she had increased her dosage due to uncontrolled pain (Tr. 373).

On February 4, 2010, six months after her first surgery, Dr. Gionnotti performed the same CMC fascial arthroplasty on Plaintiff's left side (Tr. 359). On June 10, 2010, Dr. Gionnotti again opined that Plaintiff was doing well with a good range of motion, near full grip strength of four out of five, and normal bony mineralization in left wrist (Tr. 357, 361). This was Plaintiff's last appointment with Dr. Gionnotti, and he indicated that he would refill Plaintiff's prescription for Vicodin one last time (Tr. 357, 361). Dr. Giannotti noted that Plaintiff had to wean herself off Vicodin and use over the counter analgesics (Tr. 358, 362).

On May 25, 2010, Terrance L Foust, D.O., observed normal bony mineralization in Plaintiff's right wrist with no acute abnormalities (Tr. 362)

Physical therapy records from Charles Cole Memorial Hospital on June 24, 2009 indicated that Plaintiff's shoulders were both within normal limits with a slight decrease in range of motion in her left wrist flexion and extension (Tr. 300-01).

Plaintiff's complaints of neck and back pain returned when she commenced treatment with pain management specialist Teresa Arveson, M.D. Per Dr. Arveson's referral, an MRI of Plaintiff's cervical spine on July 24, 2010 provided an impression of mild diffuse disc osteophyte at C3-C4,

C4-C5, and C5-C6, but no disc herniation, no protrusion, no central canal, and no neuroforaminal stenosis on C2-C3, C6-C7, and C7-T1 (Tr. 388-89).

Dr. Arveson's pain management treatment notes provided an impression of cervical degenerative disc disease, cervicalgia, cervical spondylosis, cervical facet arthropathy, cervical radiculopathy, and cervical spinal stenosis (Tr. 364, 366, 370). Plaintiff's upper extremities had intact sensation to light touch, strength of four out of five, and muscle strength reflexes of 1+ (Tr. 364, 370). Plaintiff also had an adequate gait and negative spurling signs (Tr. 366). In August 2010, Plaintiff rated her back pain as five out of ten and stated that Vicodin and Flexeril "take the edge off" (Tr. 366). In December 2010, Plaintiff noted a decrease in pain to four out of five (Tr. 364). Examination revealed full strength in the upper extremities and adequate lumbar range of motion (Tr. 364). Although Plaintiff complained of pain, she declined offered treatment options, including cervical epidural steroid injections, and a cervical medial branch block (Tr. 365).

## IV.   Review of ALJ Decision

A five-step evaluation process is used to determine if a person is eligible for disability benefits. See 20 C.F.R. §§ 404.1520, 416.920; see also Plummer, 186 F.3d at 428. If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. §§ 404.1520, 416.920. Before

moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that she is unable to engage in past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the plaintiff. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

### A. Plaintiff Allegations of Error

### 1. ALJ Residual Functional Capacity Finding

Plaintiff contends the ALJ erred in finding Plaintiff's residual functional capacity by failing to consider Plaintiff's ability to use her right dominant extremity. Pl. Br. at 6, Doc. 9.

The ALJ evaluated the record before determining Plaintiff's residual functional capacity.

### a. ALJ Review and Findings

"The claimant has neck, back, wrist, and hand pain. The above impairments cause more than minimal limitations in the claimant's ability to perform basic work activities and therefore are severe." (Tr. 22).

"After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b)." (Tr. 22).

"The claimant alleges significant functional deficit and nerve pain stemming from bilateral metacarpal joint disease. The claimant also alleges chronic neck pain of long duration. The claimant

testified that she has numbness and tingling in her hands and fingers, and spasm and weakness in her hands. The claimant further testified that she has had surgery on both hands, which did not improve her condition and as a result she frequently drops things and has to use both hands to grasp items." (Tr. 23).

"The objective medical evidence does not support the extent of the limitations alleged by the claimant. MRI of the claimant's cervical spine in January 2008 revealed disc herniations at C2-C3, C4-C5, C5-C6, and C6-C7. The claimant participated in pain management and received several injections for her neck pain. The claimant also commenced treatment complaining of numbness and weakness in her hands bilaterally. EMG and nerve conduction revealed bilateral CMC joint arthrosis. The claimant complained of left shoulder pain and an MRI in April 2009 revealed degenerative changes and suspected labral separation. On May 6, 2009, Dr. Gianotti performed a left CMC arthroplasty. Prior to the surgery on the left, Dr. Gianotti noted that the claimant had [a] good result after surgery on the right. The claimant continued to follow up with Dr. Gianotti until June 2010 when Dr. Gianotti indicated that he would refill the claimant's prescription for Vicodin one last time. Dr. Gianotti indicated that the claimant had to wean herself from Vicodin and use over the counter analgesics. The claimant's complaints of neck and back pain returned when she commenced treatment with pain management specialist Teresa Arveson, M.D., in July 2010. For the first time, the claimant complained of numbness, weakness, skin temperature changes, muscle cramps, dizziness, headaches, and blurred vision. Repeat MRI of the claimant's cervical spine revealed, as per Dr. Arveson, some resolution of portions of the claimant's cervical disc disease, but some remaining at C3-C4 through C5-C6. In July, Dr. Arveson continued the claimant's Vicodin and Flexeril. It appears that these medications, although authorized by Dr. Arveson, were prescribed by

the claimant's medical doctor, Susan Miller, M.D. In August 2010, the claimant rated her back pain as 5/10 and stated that Vicodin and Flexeril 'take the edge off.' In December 2010, the claimant rated her pain as 4/10, which she characterized as an *increase* since her previous visit (emphasis in original). Examination in December 2010 revealed full strength in the upper extremities and adequate lumbar range of motion, although the claimant complained of pain. <u>The claimant declined offered treatment options</u>, including cervical epidural steroid injections, and cervical medial branch blocks. Dr. Arveson discussed <u>the claimant's medical doctor's refusal to prescribe narcotic pain medication after the claimant failed to have narcotics in her urine</u>. Dr. Arveson opined that a similar test result would constitute a violation of [the] narcotics agreement." (Tr. 24) (emphasis added).

"<u>The record reveals numerous inconsistencies in the claimant's allegations concerning her symptoms, alleged limitations, alleged pain levels and her use of narcotic pain medications</u>. In September 2008, the claimant stated that her main problem was head, neck and back <u>pain 'for five years.' However, the claimant worked consistently during this period</u>, which would have commenced in September 2003. In May 2009, the <u>claimant complained that her real vocational problem is right hand and wrist issues, but in October 2008, Dr. Kumar did not list this condition and noted her upper extremity strength to be 6/6</u>. Oddly enough, in May 2009, the <u>claimant admitted that she can 'sort laundry if needed.'</u> Most significantly, in November 2009, both <u>the claimant's urine and blood were negative for the presence of narcotics, despite her contention that she had increased her dosage due to uncontrolled pain. [The ALJ] conclude[s] that the lack of narcotics in the claimant's system supports the finding that her pain is not as severe as she alleges</u>." (Tr. 24) (emphasis added).

"The claimant's daily activities are not consistent with her treating records or with her allegations. In May 2009, the claimant submitted a function report in which she stated that she

requires assistance with nearly all personal care activities, including dressing, bathing, caring for her hair, shaving and cutting her food. She attributed her need for help to 'no ability with right hand.' Yet, in the same report, the claimant indicated that she was able to feed her cat and dog, take medication (presumably opening the bottles) and sort laundry. The claimant stated that she cannot write checks to pay bills because she has no use of her right (dominant hand). However, in August 2009, the claimant was able to sign both her appointment of representative and the fee agreement. In July 2010, the claimant admitted that she was fully independent in all activities of daily living." (Tr. 24) (emphasis added).

"As for the opinion evidence, none of the claimant's treating sources has indicated that the claimant cannot work. The state agency medical consultants' opinions are given some weight as they are generally consistent with the ability to perform light work." (Tr. 24) (emphasis added).

"In sum, the above residual functional capacity assessment is supported by the objective medical evidence, the claimant's admitted daily activities and the credible opinion evidence. As noted, there are significant inconsistencies in regard to the claimant's allegations and these inconsistencies render the claimant less than fully credible." (Tr. 25) (emphasis added).

"The claimant is capable of performing past relevant work as a nurse. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. 20 C.F.R. § 404.1565." (Tr. 25).

"The claimant worked as a nurse for many years at substantial gainful activity levels." (Tr. 25).

"In comparing the claimant's residual functional capacity with the physical and mental demands of this work, [the ALJ] find[s] that the claimant is able to perform it as actually performed.

<u>As described by the claimant, her past work as a nurse did not involve significant lifting and was described by the claimant as less than 10 pounds and</u> the amount of standing and walking <u>is consistent with the ability to perform the full range of light work</u>." (Tr. 25) (emphasis added).

### b. Case Law and Analysis

Plaintiff contends the ALJ erred in failing to properly consider Plaintiff's limitations. Pl. Br. at 6, Doc. 9. From the review of the record, the ALJ throughly evaluated Plaintiff's severe impairments; medical history; hearing testimony; objective medical evidence; report of successful result from right CMC arthroplasty surgery; Plaintiff's decline of offered treatment options; inconsistencies in alleged symptoms, limitations, pain levels, and lack of narcotics her system to support the finding that pain was not as severe as alleged; allegations of pain for five years when Plaintiff would have worked consistently during the period; complaints of right hand and wrist issues with medical notation of 6/6 upper extremity strength; ability to perform daily activities with hands; that none of the treating sources indicated Plaintiff could not work; opinion evidence; credibility; and ability to perform past work as a nurse as actually performed and described by Plaintiff that did not involve significant lifting (less than 10 pounds) and was consistent with the residual functional capacity to perform a full range of light work.

The weight afforded to any medical opinion is dependent on a variety of factors, including the degree to which the opinion is supported by relevant evidence and consistent with the record as a whole. 20 C.F.R. § 404.1527(c)(3)-(4). Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion. 20 C.F.R. § 404.1527(c)(4). A treating physician's opinion does not warrant controlling weight under the regulations unless it is well supported by clinical and laboratory diagnostic findings and consistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); <u>Plummer</u>, 186 F.3d at 429. If a treating source's opinion is

not entitled to controlling weight, the factors outlined in 20 C.F.R. § 404.1527(c)(2) are used to determine the weight to give the opinion. Id. The more a treating source presents medical signs and laboratory findings to support his medical opinion, the more weight it is entitled. Id. Likewise, the more consistent a treating physician's opinion is with the record as a whole, the more weight it should be afforded. Id. The Commissioner is not bound by a treating physician's opinion, and may reject it, if there is a lack of clinical data supporting it, or if there is contrary medical evidence. Lyons-Timmons v. Barnhart, 147 F. App'x 313, 316 (3d Cir. 2005).

The ALJ, not the treating or examining physician, must make the disability and residual functional capacity determination. 20 C.F.R. § 404.1527(d)(1)-(2); Chandler v. Comm'r of Soc. Sec., 667 F.3d 356 (3d Cir. 2011). "The law is clear that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Chandler, 667 F.3d at 361; Coleman v. Astrue, 2012 WL 3835403, at *2 (3d Cir. Sept. 5, 2012) (holding that ALJ may choose non-examining physician opinion over treating physician opinion as long as medical evidence not rejected for wrong reason or no reason).

The case law in this circuit makes clear that physician opinions are not binding upon an ALJ, and that an ALJ is free to reject a medical source's conclusions. Chandler, 667 F.3d 356 at 361. In so doing, however, the ALJ must indicate why evidence was rejected, so that a reviewing court can determine whether "significant probative evidence was not credited or simply ignored." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir.1981). Mistick v. Colvin, No. 12-cv-1031, 2013 WL 5288261 (W.D. Pa. Sept. 18, 2013).

In this case, although Plaintiff had CMC arthroplasty on both the right and left side, she required only conservative treatment after that (Tr. 214, 263, 312, 359). For example, Drs. Shifrin, Petre, Nestor and Gionnotti each recommended nothing more than outpatient physical therapy,

occupational therapy, and range of motion exercises (Tr. 284, 327-28, 347). Dr. Giannotti also recommended Plaintiff wean herself off Vicodin and use only over the counter analgesics (Tr. 358, 362).

In Chandler v. Comm'r of Soc. Sec., 667 F.3d at 362, the Third Circuit held that the district court had erred in concluding that the "ALJ had reached its decision based on its own improper lay opinion regarding medical evidence." Id. "The ALJ– not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Id. at 361 (citing 20 C.F.R. 404.1527(e)(1), 404.1546(c)).

Plaintiff contends the state agency physician assessment was completed before Plaintiff had the arthroplasty of her left thumb, and it is conceivable the doctor would have placed additional restrictions on the Plaintiff's ability to use her left upper extremity. Pl. Br. at 5, Doc. 9. However, no treating doctor placed restrictions on Plaintiff's ability to work, and case law supports assessments performed with a time lapse.

"Plaintiff also argues that because the conclusions of Dr. Schiller and Dr. Newman were reached prior to the amended alleged disability onset date of November 1, 2010, the ALJ's decision that Plaintiff's mental impairments cause only mild limitations is not supported by substantial evidence. Defendant counters that because the reports of Dr. Schiller and Dr. Newman were consistent with the record as a whole, the ALJ reasonably relied upon them, despite the fact that the reports were authored approximately three months prior to Plaintiff's amended disability onset date. Although the reports of Dr. Schiller and Dr. Newman were completed prior to Plaintiff's amended alleged disability onset date, '[t]he Social Security Regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it.' Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Updated reports are required only if there is new medical

evidence which in the opinion of the ALJ may change the findings of the consultative examiner. Id. (citing S.S.R. 96–6P, 1996 WL 374180, at *3–4). Moreover, as discussed above, the Court believes that the ALJ appropriately concluded that the report by Dr. Huang was inconsistent with the record and not supported by objective medical evidence. The ALJ properly found that the reports of Dr. Schiller and Dr. Newman were consistent with the record. Accordingly, the ALJ did not err in relying on the consultative examiners' reports rather than the later completed report by Dr. Huang. See Chandler, 667 F.3d at 356." See Donley v. Colvin, No. 13–775, 2013 WL 6498261, at *13 (W.D. Pa. Dec. 11, 2013).

When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. SSR 96–7p, 61 Fed. Reg. 34483 (July 2, 1996). In particular, an ALJ should consider the following factors: (1) the plaintiff's daily activities; (2) the duration, frequency and intensity of the plaintiff's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication for relief of the symptoms; (6) any measures the plaintiff uses or has used to relieve the symptoms; (7) the plaintiff's prior work record; and (8) the plaintiff's demeanor during the hearing. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); Jury v. Colvin, No. 3:12-cv-2002, 2014 WL 1028439 (M.D. Pa. Mar. 14, 2014). When the Court reviews the ALJ's decision, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters v. Commissioner of Soc. Sec., 127 F.3d 525, 531 (6th Cir.1997) (citing Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.")). Furthermore, in

determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

The ALJ properly concluded that Plaintiff's activities of daily living revealed a greater level of functionality than Plaintiff claimed. 20 C.F.R. § 404.1529(c)(3)(I) (an ALJ should consider a claimant's daily activities when evaluating whether symptoms are disabling). Although Plaintiff alleged a difficulty completing activities of daily living due to right hand pain, she testified that she handled personal care, took medication (presumably opening the bottle), took care of a dog, sorted laundry, and could lift a gallon of milk (Tr. 51, 139, 142). The ALJ also noted that although Plaintiff "stated that she [could not] write checks to pay bills because she has no use of her right (dominant hand)…[Plaintiff] was able to sign both her appointment of representative and the fee agreement" (Tr. 24). The ALJ appropriately concluded that Plaintiff's self-reported activities of daily living were inconsistent with the allegations of debilitating symptoms incompatible with light work.

In addition, despite Plaintiff's contention that she increased her dosage of narcotics in November 2009 due to uncontrolled pain, urine and blood tests were negative for the presence of narcotics (Tr. 373). Therefore, the ALJ concluded "that the lack of narcotics in [Plaintiff's] system supports the finding that her pain is not as severe as she alleges" and diminished her credibility argument (Tr. 24).

Although Plaintiff complained of tenderness in her hands, treatment records outline an individual with a full range of motion and normal grip strength following surgery (Tr. 214, 263, 312, 359). Specifically, Dr. Shifrin indicated that Plaintiff had a full range of motion in her wrists, normal grip strength, and normal upper extremity strength (Tr. 291, 331-32). On several occasions, Dr. Gionnotti noted that Plaintiff was doing well, had a full range of motion in her wrist, near full grip

strength of four out of five, and normal bony mineralization in both wrists (Tr. 306, 327, 344, 357, 361). Dr. Foust also observed normal bony mineralization throughout Plaintiff's right hand (Tr. 362). Lastly, state agency physician Dr. Kamenar stated that Plaintiff could perform light work (Tr. 319). Although Dr. Kamenar indicated that Plaintiff had manipulative limitations in her ability to reach in all directions and handle, she felt that Plaintiff could "perform occasional activities involving handling with her right hand. Her right hand is her dominant hand." (Tr. 320).

Plaintiff also engaged in many activities of daily living. For example, she handled her personal care, took medication (presumably opening the bottle), took care of a dog, sorted laundry, and could lift a gallon of milk (Tr. 51, 139, 142).

Thus, the ALJ limited Plaintiff to light work, which took into account her limitations and impairments, such as the ability to lift heavy objects with her hands.

"[T]he ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record. No specific functional limitations were provided by any of Plaintiff's medical sources with respect to her carpal tunnel syndrome, and the ALJ limited the amount of weight Plaintiff could lift with her arms in his RFC and hypothetical. The Court finds that the ALJ's finding was supported by substantial evidence and will not remand for further consideration of Plaintiff's . . . carpal tunnel syndrome." Rybarik v. Astrue, No. 12–515, 2012 WL 5906162, at *6 (W.D. Pa. Nov. 26, 2012).

"[T]he ALJ is not bound to accept every limitation that is found by a medical professional, but rather only the ones that she finds are credibly established by the record. See Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 147 (3d Cir. 2007). Contrary to Plaintiff's assertion, the ALJ did not err by incorporating into her RFC finding only those limitations which she found to be credibly established by the objective medical evidence and the Court finds that the ALJ's RFC determination

as well as her ensuing hypothetical to the vocational expert both enjoy the support of substantial record evidence. Finally, the Court finds that the ALJ evaluated the medical opinion evidence properly and in accordance with the applicable rules and regulations and that substantial record evidence supports her evaluation. The ALJ gave a detailed explanation for why the medical source statements from the mental health providers were not given controlling weight the ALJ discussed at length her justification for why the medical source statements from Dr. Jahangeer and Ms. Walker were inconsistent with and contradicted by the other medical evidence of record, including their own notes and prior findings. The Court finds that the ALJ discharged her duty because she (i) demonstrated her consideration of all the relevant medical evidence, (ii) addressed the contradictory evidence in the record which conflicted with her findings, and (iii) explained why that contrary evidence was rejected or not given controlling weight. See Cotter, 642 F.2d at 705. Indeed, the overarching theme of the ALJ's decision was the complete lack of objective medical evidence which corroborated or even tended to support Plaintiff's complaints of severely disabling impairments and the Court agrees with the ALJ's finding that such corroborating evidence was woefully lacking in the record. Plaintiff's subjective complaints were corroborated only by her own self-reports, which—for the reasons discussed by the ALJ—were not particularly credible. To that end, the Court finds that the ALJ's credibility determination is well-supported by the record and that Plaintiff's arguments to the contrary are completely unpersuasive, particularly given the minimal treatment record, the inconsistencies in the record that were highlighted and discussed by the ALJ . . . Accordingly, the Court concludes that substantial record evidence supports the ALJ's determination of non-disability." Stewart v. Astrue, No. 13–73, 2014 WL 29035, at *1, n.1 (W.D. Pa. Jan. 2, 2014).

Similarly in this case, the record does not support Plaintiff's assertions of disabling severity. Plaintiff's contentions of error are inconsistent with the objective evidence and activities of daily

living. From the ALJ's extensive review, substantial evidence supports the weight accorded to the allegations and opinions of record.

Thus, the ALJ's RFC finding includes only "credibly established limitations" and not all impairments alleged by claimant, Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005). Accordingly, the ALJ relied on the record and testimony in determining Plaintiff's residual functional capacity, and the findings are supported by substantial evidence.

## V. Conclusion

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1382c; Brown, 845 F.2d at 1213; Johnson, 529 F.3d at 200; Pierce, 487 U.S. at 552; Hartranft, 181 F.3d at 360; Plummer, 186 F.3d at 427; Jones, 364 F.3d at 503. Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla of evidence. It does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. Monsour Med. Ctr., 806 F.2d at 1190. Here, a reasonable mind might accept the evidence as adequate, and the Court will affirm the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

An appropriate order in accordance with this memorandum to deny Plaintiff's appeal will follow.

Dated: August 20, 2014                                  s/Gerald B. Cohn
                                                                                     GERALD B. COHN
                                                        UNITED STATES MAGISTRATE JUDGE